## THE INTEROCEAN OIL COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 115.   Argued January 12, 1926.—Decided March 1, 1926.

Where a company, which supplied oil to the Government during the war, moved its storage tanks from the place where they were established to a distant locality, at the demand of an army officer, relying on his promise that all expenses and losses to be thereby sustained would be paid by the Government and believing that he was acting within the scope of his authority, but knowing his action was subject to written confirmation by a superior, which was never given, *held,* that there was no express contract of the Government to pay the expenses, and damages to the company's business, resulting from the removal; and that no contract could be implied.
59 Ct. Cls. 980, affirmed.

APPEAL from a judgment of the Court of Claims dismissing the petition on demurrer.

*Mr. Charles E. Kern,* with whom *Mr. John Paul Earnest* was on the brief, for appellant.

*Solicitor General Mitchell, Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, and *Mr. Randolph S. Collins,* Attorney in the Department of Justice, for the United States, submitted.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is an appeal from a judgment of the Court of Claims, entered May 26, 1924, sustaining a demurrer filed by the United States, and dismissing the petition upon the ground that it does not state a cause of action. The facts stated in the petition are as follows:

The appellant, the Interocean Oil Company, was, in 1918 and before, engaged in refining, transporting and dealing in petroleum and petroleum products, chiefly fuel oil, at Carteret, New Jersey, where it owned and operated a refinery and storage tanks. It also had a refinery at Baltimore, Maryland. During the War, the corporation was represented in Baltimore by Harold F. Brown in the sale of oil to the Shipping Board and the United States Navy. Brown made arrangements with Major Ross of the Quartermaster's Department of the United States Army, acting under the direction of Colonel Kimball, in charge, for the purchase by that department of fuel oil for army transports. After experiments made under the direction of Major Ross, a satisfactory grade of fuel oil was obtained by mixing the heavy gravity oil of this oil company with the light gravity oil of the Standard Oil Company. Major Ross then directed Brown to be prepared to furnish the full quantity of fuel oil required by the Quartermaster's Department. Ross complained that there was not enough storage for fuel oil at Baltimore. Brown advised him that the steel plates with which to erect the tanks could not be obtained on account of the War. Ross, finding that the company owned storage facilities at Carteret, demanded that they be removed to

Baltimore.  In a conversation, in April, 1918, Ross advised the officers of the company that the Quartermaster's Department was short of fuel oil and that there must be additional tankage, and that unless the tankage at Carteret was removed to Baltimore, the Department would seize it and remove it itself as an exigency of war; but that if the claimant was willing itself to transfer the tanks, it would be satisfactory to the Department, and that all expense incurred and all losses sustained would be paid by the Government.  The company's officers advised Ross that the removal of the tanks would mean the destruction of its business at New York, but Ross said it would be compensated for all its loss and damage and that failure to remove the tanks would result in the Department itself doing the work.  The officers of the company were convinced that Ross was acting within the scope of his authority, because theretofore when he had given verbal orders to Brown for fuel oil, they had always been followed in due time by confirmatory written orders, and thereafter prompt payment had been made for the oil purchased.  Indeed, so accustomed was Brown to this that he had complied without question with every order, depending upon the future confirmation of it.  In respect of the movement of the tanks, Ross said that he was authorized to act for the War Department, and that written official confirmation thereof would be forthcoming from that Department.  When Ross's attention was called to the fact that these confirmatory orders had not come, he said it was an oversight and promised they would be forthcoming at once from Colonel Kimball.  Later he said he had made out the orders and delivered them to Colonel Kimball, who would sign them as evidence that proper official authority was being exercised.  They were never signed or delivered, however, and Colonel Kimball left the service and went abroad because of ill health, and later died.  The removal of the tanks was begun by the com-

pany with all dispatch, and it was far advanced when the Armistice was signed November 11, 1918. This made their use unnecessary for the purpose of the War Department. They were not re-erected and in condition for use at Baltimore until February, 1919.

The petition averred that the removal of the tanks from Carteret resulted in the claimant's losing its right to re-erect them at Carteret because of action of the legislature of New Jersey and the local authorities. The items of damage included the actual expense incurred in taking down the plant at Carteret and its freight to Baltimore, and its re-erection there, which amounted to about $54,000. The claim made also included an item for the depreciation in the plant at Carteret of $220,000 and one for the loss of franchise to conduct business at Carteret and the profit on the probable sales of oil at Carteret for five years from April, 1918, to October, 1923, which was put at $2,300,000.

It is contended on behalf of the claimant that the Government got the benefit of the contract made between Ross and it, that it had the right to rely on Ross's authority, and that performance of the contract saved the necessity of a written agreement as required by Rev. Stats. § 3744. The petition set forth no facts upon which the United States can be said to have made any contract, whether oral or written, with the claimant company. There is no averment that Major Ross was authorized to make the contract upon which suit is brought. The averments are only that Ross told the officers of the company that he had the authority to make the contract, and that there would be a written confirmation by his chief, Colonel Kimball. It is expressly admitted that no such written confirmation by Colonel Kimball was ever signed or delivered to the company. The necessary effect of the lengthy averments of the petition is that Ross did not have authority to make a contract for the Government such as that

sued on, but that the authority was vested in Colonel Kimball, and that until Colonel Kimball signed the contract, it did not bind the Government. All the statements of the petition united together are no more than to say that the company relied on the promise of Major Ross that Colonel Kimball would confirm the contract which Ross proposed to make and said that he had authority subject to Kimball's confirmation to make. But Kimball never confirmed it.

Nor is there any implied contract binding upon the Government. The Oil Company was dealing with its own property in moving it from Carteret to Baltimore, and when the tanks were removed to Baltimore, they still belonged to the company for use by it not only in storing oil for the Government but for anyone else. There was no enrichment of the Government to its knowledge, no benefit in the form of property given to it or of service rendered to it from which the contract by it to pay could be implied. The Court of Claims was right in sustaining the demurrer, and the judgment is

*Affirmed.*